LASSER, P.J.T.C.
Taxpayer Rose Marie Meyer contests a determination by the Director of the Division of Taxation that deferral of repayment of the principal of three mortgage loans by decedent Mary E. Roth shortly before her death constitutes a transfer to taxpayer in contemplation of death, and that the value of the transfer is taxable under the Transfer Inheritance Tax Act, N.J.S.A. 54:33-1 et seq. The Director valued the transfer at $34,193 and imposed a transfer tax of $5,129 on taxpayer.
Mary E. Roth died on September 3, 1981. Her last will was dated February 12, 1981. Her beneficiaries were her brother, G. Fred Roth, and her niece, Eleanor R. Zweifel. An agreement between decedent and taxpayer dated March 16, 1981 deferred taxpayer’s repayment of the principal of the three mortgage loans until taxpayer’s death, or until taxpayer no longer occupied premises known as 256 Skylands Road, Ring-wood, New Jersey.
The Skylands Road property had been purchased by taxpayer and her husband, William Meyer, on December 28, 1962. On January 26, 1963 they gave a $13,300 mortgage on the property *457 to William’s parents to secure loans by his parents to purchase the house.
Thereafter taxpayer became friendly with decedent, a retired school teacher who was her neighbor. Taxpayer assisted decedent in caring for Florence Cummings, an invalid, retired school teacher who lived with decedent. When decedent and taxpayer could no longer care for Cummings, she was placed in a nursing home, leaving decedent alone in her house. Taxpayer offered to take decedent into taxpayer’s home. Decedent accepted this offer, moved in with taxpayer and put her house on the market. Decedent’s house was sold on November 26, 1973 for $45,500. To provide for her comfort in taxpayer’s home, decedent arranged and paid $16,000 for the construction of an approximately 25' by 25' addition to taxpayer’s house.
Taxpayer alleges that she and decedent had an oral understanding that decedent could live rent free with her. Taxpayer explained that it was their understanding over the years that decedent could continue to live in the house if taxpayer died first, that taxpayer could live in the house for the rest of her life if decedent died first, and that upon the death of the survivor, the house would go to decedent’s heirs. Taxpayer testified that she so provided in her will and she believed that decedent’s will contained reciprocal provisions until decedent changed her will in February 1981.
Taxpayer soon became aware that marital problems with her husband could jeopardize decedent’s investment in the addition to taxpayer’s house in the event of a divorce, because decedent had no documentary evidence of her interest in taxpayer’s house. On September 18, 1974 taxpayer gave decedent a note and mortgage in the amount of $16,000 to evidence decedent’s investment in taxpayer’s house. On April 10, 1975, in order to avoid a threat of foreclosure, decedent purchased the mortgage on the house held by William Meyer’s parents for $15,627. Decedent advanced additional sums for house repairs, and taxpayer executed a note and mortgage on May 28, 1975 in the *458 sum of $12,500 as evidence of these advances. The mortgage loans secured by the house and owed to decedent amounted to:
1. September 18, 1974 — house addition mortgage $16,000
2. April 10, 1975 — assignment of original $13,300 mortgage, plus an amount which presumably was accrued interest to date of assignment 15,627
3. May 28, 1975 — mortgage for additional funds advanced 12,500
Total $44,127
William Meyer conveyed his interest in the house to taxpayer on July 12, 1976. Taxpayer and William Meyer were divorced on July 22, 1976. On August 18, 1976, decedent and taxpayer entered into an agreement under which any and all interest on the three mortgage loans was forgiven. Taxpayer and decedent lived together in harmony until a fire destroyed taxpayer’s house on Friday, July 13, 1979. Decedent went to live with her niece, Eleanor. Taxpayer offered decedent the fire insurance procéeds, but decedent refused, saying the proceeds should be used to rebuild the house. Taxpayer testified that decedent intended to return to live with her when the house was rebuilt.
Apparently the house was not sufficiently rebuilt by 1981 to enable decedent to return. On February 12, 1981 decedent made a new will, leaving her entire estate to her brother and niece. Decedent executed an agreement with taxpayer on March 16,1981, modifying the August 18, 1976 interest-forgiveness agreement by providing that no demand for payment of the principal of the three mortgage loans would be made during taxpayer’s lifetime or for as long as she occupied the premises. Later in 1981 decedent became ill, underwent surgery, left the hospital and went to her brother’s home. She died shortly thereafter on September 3, 1981. At her death she was 82 and taxpayer was 48. The three mortgages on taxpayer’s house were the principal assets of the estate.
*459 The Director regarded the March 16, 1981 agreement as the creation of a life estate in taxpayer and a transfer in contemplation of death. He valued this life estate at $34,193, using the life expectancy table specified in N.J.S.A. 54:36-2, and taxed this interest at the 15%, non-relative, beneficiary rate, for a tax of $5,129.
Taxpayer contends that:
1. The March 16, 1981 agreement was not a transfer in contemplation of death made within three years of death, but a memorialization of a prior agreement that both taxpayer and decedent could live in the house for their lives and that the survivor would bequeath the house to decedent’s heirs.
2. In the alternative, if the transfer were taxable as a transfer in contemplation of death, its value would be $1,100, not $34,193.
The three mortgages originally were given to or acquired by decedent to protect her legal right to monies she invested in taxpayer’s house. It is alleged that there was an understanding of mutual help that existed between the two women over the years. However, between 1974 and 1981 their practice was to reduce their understandings to writing with the assistance of an attorney. These took the form of two mortgages given by taxpayer to decedent, an agreement of August 18, 1976 forgiving all interest on the mortgages, as well as reciprocal wills and an agreement of March 16, 1981 deferring mortgage loan principal repayment. The reciprocal wills were not submitted in evidence but, if there were reciprocal wills, such an arrangement would be a transfer taking effect upon death. Care was taken to provide documentary evidence of the transactions between taxpayer and decedent. The advances were acknowledged to be loans and were evidenced by notes and mortgages. The August 18, 1976 agreement went no further than to forgive all interest. There is no evidence of the intent at that time to create a life estate or waive repayment of principal for life, although such provisions could have been made a part of that agreement. Later, the rejection of the *460 proffer of the fire insurance proceeds raised the issue again, but resulted not in the creation of a life estate but merely a suggestion that the proceeds not be repaid at that time but rather be used to rebuild taxpayer’s house.[1]
It was not until the March 16, 1981 agreement that repayment of the mortgage loans was deferred for taxpayer’s life or until she no longer occupied the premises. That agreement does not state that it is memorializing a prior agreement. It states that it revokes all prior agreements, if any, except the August 18, 1976 interest-forgiveness agreement, which it modifies. The revocation of prior agreements negates the existence of a life-estate agreement prior to 1981.
The decedent did not ask for repayment of the principal of the mortgages- between 1976 and 1981. The right to require payment of all interest was relinquished in 1976, while the right to require repayment of the principal for life was not relinquished until 1981. Taxpayer has not met the burden of proving that the deferral of repayment of mortgage principal for life was granted prior to 1981, and there is no proof that the transfer in 1981 was not a transfer in contemplation of death. See In re Lichtenstein Estate, 52 N.J. 553, 247 A.2d 320 (1968). There also is no proof that the real estate securing the mortgage loans is worth less than the principal of the mortgages.
I conclude that, the 1981 agreement deferring repayment of the $41,800 principal of the three mortgage loans is a transfer in contemplation of death subject to tax, and turn to the value of the interest transferred.
At the time of transfer, the unpaid principal of the three mortgage loans totaled $41,800 and the loans were not interest-bearing, the interest having been waived by the 1976 agreement. The 1981 transfer gave taxpayer the right to continued use of the $41,800 for her life or for as long as she occupied the premises. The first condition is susceptible of valuation by the *461 use of mortality tables. The second condition cannot be valued and, therefore, it must be assumed that taxpayer will reside in the property during her life. N.J.S.A. 54:36-2 specifies the table to be used in valuing life estates.[2] This table has a factor of .77488 to value the life estate of a 48-year-old female at a 6% interest rate. The Director valued the transfer at $34,193 ($44,127 X .77488).
Taxpayer contends that this statute and table do not apply to the subject, but rather that the proper calculation should be based on an obligation to repay $44,127[3] in 28 years (48-year-old female life expectancy) with interest at 13%%. Taxpayer’s expert concluded that $1,100 invested at 13%% for 28 years would grow to $44,127, and that $1,100 is the present worth of the right to receive $44,127 in 28 years, assuming an interest rate of 13%% each year. The fallacy in this argument is that taxpayer has the use of the principal each year for 28 years, while the remainderman must wait 28 years to receive the principal.
I find that the taxpayer’s calculation does not correctly value the life estate transferred to the taxpayer.
Interest is not involved, so the valuation is limited to the right to use the principal sum of $41,800. The valuation date is September 3, 1981, the date of death. Nicholas v. Martin, 127 N.J.L. 35, 21 A.2d 323 (Sup.Ct.1941), aff’d o.b. sub nom. Rutgers v. Martin, 127 N.J.L. 603, 23 A.2d 406 (E. & A.1942).
Two of the mortgages are demand mortgages and can be valued at the principal outstanding as of the date of death. The third mortgage, in the principal sum of $13,300 and dated January 26, 1963, bears interest at the rate of 6%, requires equal monthly installments of $85.70 commencing March 1, 1963, and is due on February 1,1988. To calculate the value of *462 this mortgage at the date of death, I must assume that the principal balance was unpaid, there being no proof that any principal payments were made on this mortgage. Decedent paid $15,627 for the mortgage in April 1975. Since interest on all mortgages was waived by the decedent, the obligation on this mortgage could not exceed the principal amount of $13,300.
I direct that the parties calculate the amount of principal due on the $13,300 mortgage as of the date of death, calculate the discounted value (at 6%) of the decedent’s right to receive the balance of principal in monthly payments until February 1, 1988, and add these two sums to the amount due on the other two mortgages ($16,000 and $12,500) to find the taxable value of the transfer, which sum is then to be multiplied by .77488 to calculate the value of the life estate and then multiplied by 15% to produce the correct tax. These computations shall be made and submitted to the court by June 11, 1984 in accordance with R. 8:9-3. Entry of judgment will be withheld pending the court’s receipt of these computations.

This event took place within three years of death.

U.S. Life Tables, after December 31, 1970, single life female 6%, published by U.S. Dept. of Health, Education & Welfare, Public Health Service.